**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MALAK BAALIM,                                )
                                             )
                   Plaintiff,                )
                                             )
         v.                                  )               No. 4:22-CV-359 NCC
                                             )
ST. LOUIS CITY JUSTICE CENTER, et al.,       )
                                             )
                   Defendants.               )

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of Plaintiff Malak Baalim, also known

as Norbert K.O. Cody II (prison registration number 176807), for leave to commence this civil

action *in forma pauperis*, or without prepayment of the required filing fees and costs.  ECF No. 2.

Having reviewed the motion and the financial information submitted in support, the Court will

grant the motion and assess an initial partial filing fee of $18.52.  *See* 28 U.S.C. § 1915(b)(1).

Furthermore, after reviewing the complaint, the Court will dismiss this case for failure to state a

claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  As a result, Plaintiff's

motion seeking appointment of counsel (ECF No. 5) will be denied as moot.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is

required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period.  After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is a pretrial detainee at the St. Louis City Justice Center.  ECF No. 2 at 1.  In his Affidavit to Proceed in District Court Without Prepaying Fees or Costs, he states that he has no income, no money in any bank accounts, and he owns no assets of value.  *Id.*  However, in support of his motion, Plaintiff submitted a non-certified inmate account statement showing average monthly deposits of $92.60.  ECF No. 3.  The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $18.52, which is twenty percent of Plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also*

*Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint

As stated above, Plaintiff is currently being held at the St. Louis City Justice Center as a pretrial detainee. ECF No. 1 at 2, 4. Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against five defendants: (1) St. Louis City Justice Center; (2) City of St. Louis; (3) Clemons Abdullah;[1] (4) Department of Corrections; and (5) Medium Security Institution.[2] *Id.* at 1-3. Based on the allegations of the complaint, Plaintiff was held at the Medium Security Institution from January 9, 2021 to June 2, 2021, and at the City Justice Center from December 25, 2020 to January 8, 2021 and then again from October 6, 2021 until complaint filing. *Id.* at 4.

---

[1] Plaintiff is presumably referring to "Jennifer Clemons-Abdullah" – the Commissioner of Corrections for the City of St. Louis – when he names defendant "Clemons Abdullah." *See* St. Louis Missouri Government: Corrections Division Profiles, https://www.stlouis-mo.gov/government/ departments/public-safety/ corrections/profiles/Bio-for-Commissioner-of-Corrections.cfm (last visited June 7, 2022).

[2] The City of St. Louis has two detention centers: the City Justice Center and the City Justice Center Annex, otherwise known as the Medium Security Institution. *See* St. Louis Missouri Government: Division of Corrections, https://www.stlouis-mo.gov/government/departments/public-safety/corrections/ (last visited June 6, 2022).

Plaintiff summarily states that his First, Fifth, Eighth, and Fourteenth Amendment rights have been violated by defendants. *Id.* at 3. However, the complaint's factual allegations supporting these assertions are disjointed and difficult to understand. As best the Court can decipher, Plaintiff's allegations can be divided into four main claims concerning his conditions of confinement: lack of availability of uncontaminated vegan food, inadequate medical and dental care, confinement in an unnecessarily high-risk facility, and lack of access to the law library. *Id.* at 5. Plaintiff attached to his form complaint multiple "Affidavit[s]" in support of his claims. ECF Nos. 1-1 & 1-2.

As to vegan food, Plaintiff alleges that the defendants have "failed to train their citizens, agents, employees, [and] staff members on what a vegan diet consist[s] of" and they have "failed to establish a policy [or] procedure to protect a person on a vegan diet from cross contamination." ECF No. 1-2 at 1. Plaintiff asserts that he "requested a vegan" diet but was "served the wrong dietary trays" or "wasn't brought food," and that he has "requested to have food ordered in to prevent cross contamination." ECF No. 1 at 7. In response to the grievances that he filed on these issues, Plaintiff alleges that his vegan trays were "talked about" but problems remain; that his requests to order in food were denied; and that "nothing was done about cross contamination." *Id.* According to Plaintiff, he received veggie trays instead of vegan trays from approximately October 6 to November 5, 2021 at the City Justice Center. ECF No. 1-2 at 1. He states that he verbally complained about this food problem on October 6th and filed grievances about it on October 26th and 30th, 2021. *Id.* at 1-2; ECF No. 1-3 at 1. Plaintiff states that the correctional officer on staff relayed the message about the need for a vegan tray and it was entered into the system but that the update to the system "took time." ECF No. 1-2 at 2. According to one of Plaintiff's grievance notes, it appears the confirmation of his vegan diet took 4 days. ECF No. 1-3 at 4. Plaintiff states

that during this time he would eat what he could "off the veggie tray or not eat at all."  ECF No.
1-2 at 2.  Once he was actually receiving vegan trays, Plaintiff complains that "too many times"
he was "served animal products on [his] breakfast, lunch and dinner trays."  *Id.*; ECF No. 1-3 at 1
(grievance filed Nov. 30, 2021).

Plaintiff asserts that he endured a similar period of repetitive complaints at the Medium
Security Institution from January 9 to February 13, 2021, until he was finally receiving vegan trays
there.  Plaintiff complains about having to frequently "educate the staff on what a vegan diet is"
because "most staff members would argue … that a veggie tray and vegan tray were the same."
ECF No. 1-2 at 2-3.  This caused "a lot of negative energy;" forced Plaintiff to face "bad attitudes;"
sometimes required Plaintiff to wait an additional 45 minutes for a replacement meal which
sometimes had "less than the daily calorie intake;" and occasionally the tray would be "sloppy"
and contain leftover food.  *Id.* at 3.  Plaintiff states that he was forced to eat "sides" off the tray or
the discarded food of other inmates.  Finally, Plaintiff complains that he was never served fruit
while at the Medium Security Institution.  *Id.*  In response to a grievance Plaintiff filed concerning
the vegan tray having inadequate portions of food, Plaintiff was told that the kitchen was "using
the correct ladles for the portions that the Nutritionist states to use."  ECF No. 1-3 at 2.

Plaintiff also complains about "cross contamination" of his vegan diet.  ECF No. 1-2 at 3-
4.  After questioning inmates who worked in the kitchen and getting a job on the "scrubb crew,"
Plaintiff alleges that he realized that his vegan food is being prepared "on the same stove with the
same pans" as non-vegan meals.  ECF No. 1-3 at 1.  Plaintiff states that he verbally complained to
multiple jail employees, including defendant Clemons-Abdullah, about this possible cross
contamination.  Plaintiff alleges that Clemons-Abdullah did nothing in response to ensure no cross
contamination of his food.  *Id.* at 1-2.  Plaintiff states that on January 4, 2022, he spoke with

5

Clemons-Abdullah, requesting that she order in his food or at least purchase separate pans for preparation of his vegan food.  Both requests were denied.  *Id.*

As for inadequate dental care, Plaintiff alleges that he was denied services at the Medium Security Institution during the months of January and February 2021 because there was no dentist on staff.  ECF No. 1-2 at 1.  According to Plaintiff, his "top right wisdom tooth" needed to be pulled due to an abscess.  *Id.* at 4.  After putting in "multiple" requests for treatment, Plaintiff was told that the dentist had been fired and that there was no dentist currently on staff.  Plaintiff requested a prescription for an antibiotic and/or pain medication.  *Id.* at 5.  Plaintiff was offered "mouthwash and aspirin."  Plaintiff states that his repeated complains went unanswered until his tooth was pulled in March.  Plaintiff had to suffer a "swollen jaw" and pain in his mouth.  *Id.*

As for inadequate medical care, Plaintiff alleges that he was denied medical attention for his heel and thumb.  ECF No. 1 at 7.  Plaintiff states that he received no response to medical service requests concerning a "left heel [that] was in pain" and for his "right hand thumb as it kept locking up."  ECF No. 1-2 at 6.  In Plaintiff's list of grievance descriptions, he states that he requested a medical wrap for his heel on February 16, 2022, because it hurt when he "walked on it for an unknown reason."  ECF No. 1-3 at 4.  Plaintiff states that he did not get the wrap, an x-ray, or sent to the hospital.  But Plaintiff was told that a nurse would look at it on February 20th – four days after grievance filing.  *Id.*  On March 3, 2022, Plaintiff filed a grievance about his thumb feeling "dislocated" due to gripping his writing utensil and "having to write to the court so much."  *Id.*  Plaintiff was told that a nurse at the City Justice Center would see him but he states that he only wanted to be seen by a nurse or doctor at a hospital, clinic, or urgent care facility.  *Id.*

Plaintiff also complains about being held "in custody at a high maximum security facility," which broke "classification," exposed Plaintiff to danger, and resulted in Plaintiff breathing in

6

"unknown chemicals from the mase [sic] the staff spray[ed] to break up fights."  ECF No. 1-2 at 1.  Plaintiff states that he is being held on non-violent criminal charges and he has been classified as a "medium security risk."  *Id.* at 5.  However, Plaintiff was housed in a "high maximum security facility" at the Justice Center from December 25, 2020 to January 8, 2021, and from October 6, 2021 to March 8, 2022.  According to Plaintiff, this higher-level facility put him at risk of injury; caused him to "witness several fights and violent behavior;" forced him to breathe unknown chemicals from mace resulting in sneezing, runny nose, watery eyes, and difficulty breathing; resulted in long periods of time in cell lockdown; led him to suffer a strip search due to the actions of a violent cellmate; risked injury from breaking up fights; and exposed him to an outbreak of COVID-19.  *Id.* at 5-6.

Finally, Plaintiff alleges a denial of access to the law library at specific points in time, but also a general lack of sufficient overall time in the library.  From October 6, 2021 to mid-February 2022, Plaintiff states that he was denied access to the library even though he had "a court order saying [he was] PRO SE."  *Id.* at 1.  Plaintiff alleges that he was "left at law library only 4 times during [his] whole stay" at the Justice Center, and that his library visits were inconsistent, not on a set schedule, and did not provide him enough time in the law library.    ECF Nos. 1 at 7, 1-2 at 7.  Plaintiff states that when he requested access to the library, he was informed that there was only a library at the Medium Security Institution.  *See also* ECF No. 1-3 at 3 (grievances filed Dec. 7 & 13, 2021, & Feb. 24, 2022).  Plaintiff spoke to commissioner Clemons-Abdullah about this in early January 2022, and he says that he was informed that he would be given access to a library.  ECF No. 1-2 at 7.  Plaintiff explains that he wants daily access to the library.  On days when he is not provided access, he has to handwrite his court documents instead of typing them and this causes

"wear and tear on [his] body."  Finally, Plaintiff complains about a lack of internet access and that all the law books in the library are old.  *Id.*

On the form complaint's 'Injuries' section, Plaintiff lists the following: emotional distress, irreparable damages, loss of energy, defamation of character, "face broke out," arthritis, blood clots, extreme hunger, runny nose, extreme cough, and upset stomach.  ECF No. 1 at 5.

For relief, Plaintiff seeks damages in the form of both "lawful US silver dollars" and "US dollars."  ECF Nos. 1 at 5, 1-2 at 8.  He also would like some policy and procedure changes at detention facilities regarding vegan meals and law library access.  Plaintiff wants internet access and "free phone calls and emails."  ECF No. 1-2 at 8.  Plaintiff also wants to be taken to the hospital for x-rays because he fears blood clots.  *Id.* at 6.

### Plaintiff's Prior Filings in this Court

Plaintiff Malak Baalim, also known as Norbert K.O. Cody II, has filed many prior cases in this Court.[3]  Relevant to this matter is a civil action Plaintiff filed in November 2021 seeking relief under 42 U.S.C. § 1983 against some of the same defendants named in this matter, including the Department of Corrections, the St. Louis City Justice Center and Clemons-Abdullah.  *Baalim v. Fowler*, No. 4:21-cv-1411-ACL (E.D. Mo. filed Nov. 30, 2021).  Relevant here, Plaintiff asserted in his pleadings in that matter that he had been sprayed by mace in the eye on one occasion, that he noticed the St. Louis City Workhouse has no dentist on staff, and that he requires a vegan diet

---

[3] The Court notes that Plaintiff has had more than three cases dismissed by this Court as frivolous, malicious, or for failure to state a claim.  *See Baalim v. Perkins,* No. 4:21-CV-1341-MTS (E.D. Mo. dismissed Feb. 1, 2022); *Baalim v. Fowler*, No. 4:21-cv-1411-ACL (E.D. Mo. dismissed Feb. 25, 2022); *Baalim v. State of Mo.*, No. 4:21-cv-1433-RLW (E.D. Mo. dismissed Mar. 15, 2022); *Baalim v. Preservation Hall LLC*, No. 4:22-cv-34-ACL (E.D. Mo. dismissed Mar. 29, 2022).

However, dismissal of this case under the three-strikes rule of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), is not appropriate because Plaintiff initiated this case by placing his filing in the prison mail system on the same day (or earlier) than the date of his third strike dismissal - March 15, 2022.  *See* ECF No. 1-5 (postmarked Mar. 15, 2022).  Plaintiff should be aware that he could be subject to the three-strikes rule of 28 U.S.C. § 1915(g) in future-filed cases.

and had been fed "cross-contaminated food" while in custody.  *Id.* at ECF No. 13.  Plaintiff did

not explain or elaborate on any of these accusations.  He did claim to have asked for dental

assistance and been denied.  The Court found Plaintiff's allegations brought under 42 U.S.C. §

1983 to be legally frivolous and dismissed the case on February 25, 2022.  *Id.* at ECF Nos. 13-14.

Plaintiff filed the instant case on March 25, 2022, approximately one month after that dismissal.

## Discussion

Based on a careful review and liberal construction of the filings before the Court, Plaintiff

has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2).  Defendants

St. Louis City Justice Center and Medium Security Institution are not suable entities.  Defendant

Department of Corrections is a state agency and therefore not a "person" subject to a § 1983 suit.

As for the remaining defendants, City of St. Louis and Clemons-Abdullah, Plaintiff's allegations

fail to state a plausible claim upon which relief may be granted.  Therefore, this case will be

dismissed under 28 U.S.C. § 1915(e)(2).

## I.   Defendants St. Louis City Justice Center and Medium Security Institution

Defendants St. Louis City Justice Center and Medium Security Institution are detention

centers in the City of St. Louis.  Plaintiff's claims against these defendants are legally frivolous

because jails and local government detention centers are not suable entities under 42 U.S.C. §

1983.  *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (affirming dismissal of §

1983 claim because "county jails are not legal entities amenable to suit."); *De La Garza v.*

*Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (holding that neither county

jail nor sheriff's department is a suable entity under § 1983); *see also Ketchum v. City of West*

*Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments or subdivisions of local

government are "not juridical entities suable as such" under § 1983); *Ballard v. Mo.*, No.

4:13CV528 JAR, 2013 WL 1720966, at *3 (E.D. Mo. Apr. 22, 2013) (holding that "Plaintiff's claims against the City of St. Louis Department of Public Safety, the St. Louis County Justice Center, the City of St. Louis Justice Center, and MSI/Workhouse are legally frivolous because these defendants are not suable entities").

According to the Eighth Circuit, "pro se status does not excuse [Plaintiff's] failure to name the proper parties." *Jackson v. Mo. Bd. of Prob. & Parole*, 306 F. App'x 333, 333 (8th Cir. 2009). Therefore, Plaintiff's § 1983 claims against defendants St. Louis City Justice Center and Medium Security Institution are subject to dismissal for failure to state a claim.

## II.    Defendant Department of Corrections

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  However, a State is not a 'person' under § 1983 against whom a claim for money damages can be asserted.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Presumably, Plaintiff refers to the Missouri Department of Corrections (MDOC) when he names the defendant 'Department of Corrections,' as Plaintiff's complaints concern MDOC facilities.  MDOC is an arm or division of the State of Missouri.  An agency exercising state power, like MDOC, is also not a "person" subject to a suit under § 1983.  *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power as an arm of the compacting state is not "person" subject to § 1983 suit).

Further, MDOC, as a division or agency of the State of Missouri, is protected by immunity from Plaintiff's claims.  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."  *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).  The

Eleventh Amendment has been held to confer immunity on a non-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." (internal quotation and citation omitted)).

Defendant Department of Corrections (as a division or agency of the State) is protected by immunity from Plaintiff's § 1983 claims. Thus, Plaintiff's § 1983 claims against defendant Department of Corrections shall be dismissed for failure to state a claim.

## III.    Defendant City of St. Louis

A governmental entity like the City of St. Louis can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Plaintiff's only allegations that could be construed as a *Monell* claim against the City of St. Louis are his assertions that defendants have "failed to train their citizens, agents, employees, [and] staff members on what a vegan diet consist[s] of" and they have "failed to establish a policy [or] procedure to protect a person on a vegan diet from cross contamination." ECF No. 1-2 at 1. However, these claims against the City fail because Plaintiff does not adequately allege that a constitutional violation resulted from any alleged lack of policy and/or failure to train.

11

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims concerning their conditions of confinement. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). According to the United States Supreme Court, the government may detain defendants prior to trial but the conditions of confinement at the detention facility cannot "amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. The Court described two ways to determine whether the conditions rise to the level of punishment. A plaintiff could demonstrate that the conditions of confinement were intentionally punitive. Alternatively, if no intent to punish was expressed, a plaintiff could show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39.

In this case, Plaintiff alleges that the City of St. Louis has failed to train its employees on the basics of a vegan diet and it has failed to create a policy or procedure to protect his vegan diet from cross contamination during preparation. However, Plaintiff does not allege (nor does the record reflect evidence) that these failures were rooted in any intention to punish on the part of the City of St. Louis. Plaintiff admits that he was often served the wrong food tray out of genuine confusion over the difference between veggie and vegan trays. He also admits that there was a mistake noting his meal preference in the computer system and once it was recorded, it "took time" to update all staff. ECF No. 1-2 at 2. In one of Plaintiff's grievance references, he claims that it took approximately 4 days for the computer system to be updated regarding his vegan diet. ECF No. 1-3 at 4. It appears that Plaintiff ate off veggie trays during that time. Plaintiff does not allege that once he clarified his meal preference, that his vegan meals were deliberately denied or that he was denied vegan meals in an attempt to punish. Instead, Plaintiff claims that his meal trays occasionally needed to be reordered and therefore, arrived late. Plaintiff also complains about

"negative energy" and "bad attitudes" but there is no evidence that any employee intentionally provided Plaintiff with the incorrect food tray. Plaintiff does that assert any intent to punish on the part of any City employee in the provision or preparation of his food tray.

Without any intent to punish, in order to establish a valid conditions of confinement claim, Plaintiff would need to show that the City's methods of preparation and distribution of vegan food trays is not reasonably related to a legitimate governmental purpose or was excessive in relation to that purpose. Plaintiff makes no such allegations here. Plaintiff provides no evidence that the policies and procedures used in the City of St. Louis detention facilities are not reasonably related to a legitimate governmental interest of safe and efficient food preparation and delivery to inmates.

Undoubtedly, prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *see also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). While control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016); *see also Davis v. State of Mo.*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

Plaintiff provides no evidence that the food provided to him "was nutritionally inadequate," "prepared in a manner presenting an immediate danger to his health," or that the "his health suffered as a result of the food." *Ingrassia*, 825 F.3d at 897. In response to Plaintiff's grievance

filing concerning inadequate portions of food, he was told that the appropriately sized serving utensils were being used according to the detention center's Nutritionist. ECF No. 1-3 at 2. Plaintiff does not allege any danger to his health from the food or that his health suffered as a result of the food. Plaintiff fails to assert that he has lost weight or suffered any medical problems as a result of any delay in receiving vegan meals.

As for Plaintiff's assertions concerning cross contamination of food, such assertions are merely speculative. Plaintiff alleges that the use of the same stove and pans for cooking *could* cause cross contamination, but he has no evidence that it has. It is unreasonable to expect that Plaintiff's meals be ordered from a source outside the detention center due to a speculative concern. Plaintiff fails to allege facts in support of a claim that his vegan meals have been prepared in a manner presenting an immediate danger to his health.

For all of these reasons, Plaintiff fails to plead sufficient facts to state a conditions-of-confinement claim that amounts to punishment or that violates the Constitution. Without a factual underpinning, Plaintiff's allegations amount to legal conclusions, which are not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that while "court must accept allegations of fact as true ... the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Because Plaintiff fails to allege facts sufficient to state claim, his assertions against defendant City of St. Louis do not survive review under 28 U.S.C. § 1915(e)(2)(B).

## IV.   Defendant Clemons-Abdullah

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin*

14

*v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).  It is not enough for Commissioner Clemons-Abdullah to have supervisory authority over the St. Louis City detention centers for the Court to construe her personal involvement in all of Plaintiff's claims of alleged constitutional violations. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983).

In the instant complaint, Plaintiff only specifically mentions personal involvement by defendant Clemons-Abdullah in two of his claims: cross contamination of his vegan meals and lack of access to the law library.  Plaintiff fails to provide sufficient allegations to state a constitutional violation in either of these areas against Clemons-Abdullah.

### A. Alleged Food Contamination

Plaintiff states that he verballed complained to defendant Clemons-Abdullah about the alleged cross contamination of his vegan meals.  Plaintiff claims that Clemons-Abdullah did nothing in response to ensure no cross contamination of his food.  Plaintiff states further that Clemons-Abdullah also denied his request that food be ordered in for him or that separate pans be purchased for food preparation.  As stated above, Plaintiff's factual allegations regarding cross contamination of his vegan meal trays are merely speculative.  Plaintiff states that his food could be contaminated during preparation, but he does allege that it actually has been.  There is no evidence of an intent to punish Plaintiff, of an unreasonable governmental purpose, or of a constitutional violation at all.  Plaintiff's allegations do not demonstrate deliberate indifference to

his health or safety.  Plaintiff fails to allege sufficient facts to state a claim as to unconstitutionally contaminated food against defendant Clemons-Abdullah.

### B.  Lack of Access to the Law Library

Plaintiff also alleges that he spoke personally to Clemons-Abdullah in early January 2022, regarding his lack of sufficient access to the law library.  According to Plaintiff, he was informed that he would be given access to the library.  ECF No. 1-2 at 7.  It is unclear whether Plaintiff did receive more library access after his verbal request, but presumably since he filed this action in March, he did not.  Plaintiff's complaint is construed as a lack-of-access-to-courts claim.

Under the First Amendment, the freedom to petition the government for redress of grievances includes the right of access to courts.  *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002).  To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic.  *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 353 n.4).  Instead, the plaintiff must plead (and ultimately prove) that the lack of the resource deprived him of some specific opportunity to defend himself or advance a viable legal claim in a criminal appeal, postconviction matter, or civil rights action.  *Id.*  Speculation that injuries might occur or could have occurred is insufficient.  *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("Absent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative.").

Here, Plaintiff alleges no actual injury from a lack of sufficient access to the law library. He does assert that he was denied the opportunity to make any legal claim on his own behalf or that he was unable to respond to any court order in a timely manner.  Plaintiff's complaints concerning a lack of sufficient access to the law library fail to state a claim against Clemons-Abdullah and will be dismissed.

## V.   Plaintiff's Other Constitutional Claims

Even if Plaintiff had alleged his remaining claims (lack of adequate health care and unnecessary confinement in a high-security facility) personally against defendant Clemons-Abdullah, or against any other suable defendant, these claims also fail to state a claim and would be subject to dismissal.

### A.  Inadequate Health Services

Although Plaintiff is a pretrial detainee and not a convicted prisoner, the Eighth Amendment's prohibition on cruel and unusual punishment still protects him from deliberate indifference to serious medical needs.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). *See Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

To prevail on a deliberate indifference claim, a plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).   A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

In this case, Plaintiff alleges that he was denied medical services for walking heel pain from an unknown cause, and for his right thumb which felt dislocated from "having to write to the court so much."  ECF No. 1-3 at 4.  Neither of these constitute serious medical needs.  Even if they did, Plaintiff was not denied care.  He was offered visits with the nurse, but he refused, stating that he only wanted care from a nurse or doctor at a hospital, clinic, or urgent care facility.  Plaintiff does not have the right to receive a specific course of treatment.  *See Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.").

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 104-05.  When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental

effects.  *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

Here, Plaintiff alleges a two-month delay in having a tooth pulled as a result of the prior dentist being fired and no new dentist having been hired.  Plaintiff claims to have suffered tooth pain during this time, but he admits to having been provided over-the-counter pain medications. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (finding that a prisoner's disagreement with medical staff's decision to offer him over-the-counter medications, rather than prescription medication, does not constitute deliberate indifference).  Plaintiff's dental-delay allegations do not amount to a deliberately indifferent failure to treat.  He was given mouthwash and aspirin.  He was scheduled for a dentist appointment as soon as the dentist was available.  Furthermore, Plaintiff does not provide evidence of any detrimental effect resulting from the two-month delay in treatment.  "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."  *Jenkins v. Cnty. of Hennepin, Minn*., 557 F.3d 628, 633 (8th Cir. 2009).

Therefore, even if Plaintiff did allege such claims against a viable defendant, Plaintiff fails to state a claim of deliberately indifferent medical or dental care.

### B. Choice of Detention Center

"Among the liberties which prisoners do not enjoy is choice of cells.  Transfer within the prison, or to another prison, is within the discretion of prison officials."  *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that prisoner plaintiffs "had no right … to be housed in a certain barrack or housing unit, or with certain inmates").

Plaintiff complains that he was detained in a facility above his security classification level and that this high-security detention put him at risk for injury.  However, Plaintiff has no constitutional right to be held in a detention center of a certain security level.  Prison is a dangerous place.  Although Plaintiff alleges that he could have been seriously injured, he does not state any serious injuries that he sustained.  He only asserts injuries of "runny nose, extreme cough, and upset stomach," presumably in relation to exposure to mace.  These allegations do not rise to the level of deliberate indifference.  Plaintiff has no constitutional right to choose where he is detained.  Therefore, Plaintiff's allegations regarding the security level of his detention facility fail to state a constitutional claim and must be dismissed.

### Conclusion

Plaintiff's complaint will be dismissed for failure to state claim under 28 U.S.C. § 1915(e)(2)(B).  Defendants St. Louis City Justice Center and Medium Security Institution are not suable entities.  Defendant Department of Corrections is a state agency and therefore not a "person" subject to a § 1983 suit.  Plaintiff's allegations against defendants City of St. Louis and Clemons-Abdullah are insufficient to state constitutional violations.  Therefore, Plaintiff's allegations fail state a plausible claim upon which relief may be granted and this case will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $18.52 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants St. Louis City Justice Center, City of St. Louis, Medium Security Institution, Department of Corrections, and Clemons Abdullah because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against all defendants are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 5] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 22nd day of June, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE